## McLaughlin *v.* Child et al.

Practice.— *Superior Court. — Supreme Court.— Assignment of Error.— Waiver.—Pleading.*—Where, in the Superior Court, on appeal to general term, no error is assigned upon the action of the court at special term, in overruling a demurrer questioning the sufficiency of the complaint, an assignment of error in the Supreme Court on appeal, questioning the sufficiency of the complaint, merely raises the question as to its sufficiency after verdict.

Contract.—*Performance.—"Erection" of Building.—Instruction to Jury.*— A. contracted with B., in writing, that if, "during" a specified year and at a point named, the latter would erect a brick " building, forty by one hundred feet in size, and three or four stories high,  *  for the purpose of manufacturing" certain articles, and would then and there " actually engage" in manufacturing the same, he, A., would pay to B. a certain sum of money.

On the trial of an action by B. against A., to recover such sum, the court instructed the jury, that if, during such year and at such place, the plaintiff had erected a brick building, "three or four stories high,  *  and enclosed, except that two or three windows might not have been in, two or three doors might not have been hung, the building not plastered, some part of the floor not laid, and an elevator not built, the building was erected, within the meaning of the contract."

*Held,* that the instruction was proper.

Same. —*Agreement to " Engage" in Manufacturing.*—The court also instructed the jury in such action, that if, on or before the last day of the year specified, the plaintiff had placed the tools and material necessary for such manufacturing business in such building, and had then and there, at work, "four or five workmen engaged in fitting and combining the materials out of which " such articles " are made into completed and perfected" articles, the plaintiff was " actually engaged in " such manufacture, within the meaning of the contract, although the different parts of such articles may have been manufactured at some other point.

*Held,* that the instruction was proper.

Same.—*Evidence Explaining Contract.*—Evidence, in such action, as to the meaning of the term " engaged in the business of manufacturing," is harmless.

From the Marion Superior Court.

*N. B. Taylor, F. Rand* and *E. Taylor,* for appellant.

*J. W. Gordon, R. N. Lamb* and *S. M. Shepard,* for appellees.

PERKINS, J.—Suit by the appellees, against the appellant, to recover the five hundred dollars mentioned in the following agreement, the complaint alleging the completion of the work, etc., according to the terms of the agreement, and that the street railroad was built, etc.

" Whereas Daniel E. Child and George F. Child, of Dayton, in the State of Ohio, propose to erect a building on what is known as the ' Mayo land,' forty by one hundred feet in size on the ground, and three or four stories high, for the purpose of carrying on the business of manufacturing cabinet organs. Now, in consideration that said Daniel E. Child and George F. Child shall, during the year 1875, erect or cause to be erected on said ' Mayo land ' a building, forty by one hundred feet in size, and three or four stories high, of brick, for the purpose of manufacturing cabinet organs, and actually engage in said manufacturing business, I, the undersigned, G. H. McLaughlin, hereby agree and obligate myself to pay to said Daniel E. Child and George F. Child the sum of five hundred dollars in good and lawful money. It is understood and agreed, by and between the parties herein, that this instrument shall be null and void, unless the street railroad is built from Indianapolis to Irvington, on what is known as English Avenue, during the year 1875.

(Signed,) " G. H. McLAUGHLIN."
" Witness, W. H. McLAUGHLIN."

A demurrer to the complaint was overruled, and exception entered.

Answer in three paragraphs :

1. General denial ;

2. No consideration ;

3. A special denial of the completion of the factory and the street railroad.

Demurrer sustained to the third paragraph of answer, and exception entered.

Reply in denial of the second paragraph.

Jury trial. Verdict for the plaintiffs (appellees), for the amount of their claim.

A motion for a new trial was overruled, and judgment rendered on the verdict.

No evidence was given in support of the paragraph of answer of want of consideration.

On appeal from special to general term in the superior court, the judgment in special term was affirmed, and an appeal taken to the Supreme Court.

The errors assigned in this court are two :

1st.  The complaint does not state a cause of action ;

2d.  The superior court, in general term, erred in affirming the judgment in special term.

The grounds assigned in the motion for a new trial were :

1.  Verdict contrary to law and the evidence ;

2.  Error in the instructions to the jury ;

3.  Error in the admission of evidence ;

4.  Excessive damages.

The construction of the street railroad is virtually admitted.

We proceed to consider the errors assigned :

1st.  As to the sufficiency of the complaint.  A demurrer was overruled to the complaint, and exception taken. But this ruling of the special term was not assigned for error on appeal to general term of said court.  The only assignment of error there was, that the court erred in refusing a new trial.

In this court, the overruling of the demurrer is not assigned for error, but the assignment touching the complaint is, that it does not state a cause of action.  The action of appellant in the premises is, in effect, a waiver of the alleged error of the court below, in overruling the demurrer to the complaint; and his assignment of error

upon it in this court must be regarded as his first objection to its sufficiency, and as raising only the question as to its being good after verdict. We need spend no time in showing that, under the circumstances, its sufficiency after verdict can not be doubted.

Further errors, not predicated upon errors assigned in general term in the superior court, can not be assigned in this court. *Wesley* v. *Milford*, 41 Ind. 413; *Johnson* v. *Kohl*, 54 Ind. 454.

2. Overruling the motion for a new trial. Everything necessary to be said on this assignment of error may properly be said in discussing the instructions to the jury. They follow:

" I instruct, on the point of the erection of the building, that, if it was located on the ' Mayo land ' in 1875, was three or four stories high, built of brick, and enclosed, except that two or three windows might not have been in, two or three doors might not have been hung, the building not plastered, and some part of the floor not laid, and an elevator not built, the building was erected within the meaning of the contract, and so far as this, the first thing to be done by plaintiffs to entitle them to the money on the contract, is concerned, it was done.

" The second thing the plaintiffs were bound to do to entitle them to this money was to actually engage, in 1875, in the manufacture of organs. You will observe that the agreement specifies no extent to which they shall be engaged in manufacturing, but only requires, that, by the last day of December, 1875, they should be actually engaged in the business. I instruct you, that if, before or on that day in the fall or winter of 1875, they had removed their manufacturing tools and material from Ohio to Irvington, and had at work, in their building there, four or five workmen engaged in fitting and combining the materials, out of which organs are made, into completed and·

perfected instruments, they were actually engaged in the manufacture of organs, within the meaning of their contract sued on, although they may have purchased elsewhere more or less of the material or separate pieces, partly prepared for use. If, we say, the workmen were engaged in and combining and fitting together, adjusting into a complete instrument, the materials and parts of which the organ is made, they were actually engaged in manufacturing. Division of labor is one of the great facts promoting the extension of manufacturing and causing the cheapness and diffusion of the manufactured article."

The appellant insists that the instructions are erroneous on the point of the completion of the building, and of being engaged in the business of manufacturing organs. He claims, as we understand him, that the building should not only have been "erected," but have been finished, and that the appellees should have been manufacturing all the parts of an organ from the raw material, viz., the ivory keys, the pipes, the screws, hinges, paints, etc., which enter into the complete instrument; that these facts should have existed on the morning of the 1st day of January, 1876, to constitute a performance of the conditions precedent in the contract, entitling the appellees to recover.

We can not concur in these views of appellant. First, as to the erection of the building. It was to be erected upon the land, and was to be the property, of the appellees. Money spent upon it would not be adding to the value of a building of appellant. He agreed to pay the appellees five hundred dollars, if they would erect a brick building, three or four stories high, upon a certain tract of land, and be engaged in it, in the business of manufacturing cabinet organs, by a certain time. The appellant was not to occupy the building, and experience pleasure or discomfort therein. He required no finish by his contract. So he, the proprietor, and the hands employed by him to work

in the building were satisfied with the finish, that was enough for the appellant. What he required was the building, and the commencement of the business of man-ufacturing organs in it, he taking the risk of the contin-uance and growth of the business. The building did not need plastering. Manufacturing establishments of that character are not usually plastered. An elevator was not necessary, perhaps not a usual part of such buildings. No number or location of doors was specified by the appellant. The building had an additional story to those required by the contract. As to the portion of floor not laid, a witness testified that the proprietor intended to place there an engine. As the building belonged to appellees they could continue to improve it at their pleasure.

We are satisfied the building was erected. In *Johnston* v. *The Ewing Female University*, 35 Ill. 518, it is decided, that "A building may be said to be erected when the walls are up and the material on the ground to complete it." That was a suit on this contract: "When a building shall be erected worth $10,000, I will give in real estate, if such building shall be erected in eighteen months, four hundred dollars." Says Judge BREESE: "There is a great difference between erecting a building and completing one." See *Commonwealth* v. *Squire*, 1 Met. 258.

In the case before us, as the contract required the appellees to be actually engaged in the business, though not specifying to what extent, we concede that the building should have been made capable of being occupied by workmen, in the business of manufacturing organs. But the erection of this building for manufacturing was very nearly its completion. What more was wanted?

The instructions touching the completion of the building are not erroneous; nor are those in regard to what constituted being engaged in the business of manufacturing organs. If those engaged in fitting and combining

the various parts of which organs are composed, and thus making out of them organs, were not engaged in the busi-- ness of manufacturing organs, in what business were they ·engaged? It seems to us unreasonable, that, if a person ·should agree to start a boot and shoe factory, and actually ·engage in the business of manufacturing boots and shoes, he could fulfil such contract only by tanning his own leather, making his own thread, wax, pegs, etc. The court did not err in its instructions.

Another point. The court permitted witnesses to testi- fy as to what was meant by the term " engaged in the busi- ness of manufacturing; whether it required the person so engaging, in order to be engaged, to be the preparer, from the raw material, of all the parts entering into the complete article manufactured. The testimony was in the negative, was just what every person of ordinary informa- tion knows, of his own general knowledge, and hence was harmless;—we do not say, was not legal.

The judgment is affirmed, with costs.